**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
WALTER AVELAR, JULIO CASTRO, EDWIN
GUEVARA, RUBEN GUEVARA, JORGE
MOJICA, JAIME REYES, NELSON RIOS,
ALEXANDER ALFARO, and DANIEL MEJIA,
individually and behalf of those similarly situated,

            Plaintiffs

            vs.

JOHN ARMATO, YVETTE ARMATO a/ka/
YVETTE BAHAMONDE, TUSCANY MARBLE
AND GRANITE, INC.,

            Defendants.
----------------------------------------------------------X

Case No. _____

**CLASS AND**
**COLLECTIVE**
**ACTION COMPLAINT**

Plaintiffs Walter Avelar, Julio Castro, Edwin Guevara, Ruben Guevara,

Jorge Mojica, Nelson Rios, Jaime Reyes, Daniel Mejia ("FLSA Plaintiffs"), and

Alex Alfaro (Collectively with FLSA Plaintiffs, "Plaintiffs") through their

attorneys McBrien Law P.C. and the Marlborough Law Firm, P.C. respectfully

allege as follows:

## PRELIMINARY STATEMENT

1.    Plaintiffs and other similarly situated non-exempt laborers including,

but not limited to stone finishers, installers and installers' helpers (the "Tuscany

Laborers") bring this action against Defendants, the owners and operators of

Tuscany Marble and Granite ("Tuscany" or "the Business"). Tuscany fabricates and installs granite and stone countertops and slabs. Tuscany operates locations in Deer Park and Williston Park, New York.

2.     The action is brought as a prospective collective action pursuant to the Fair Labor Standards Act of 1938 ("FLSA") for willful failure to pay overtime premium compensation to Plaintiffs and other similarly situated workers when working more than forty hours in a workweek.

3.     In addition, the action asserts individual and class action claims under the New York Labor Law ("NYLL") for willful failure to pay overtime premium pay when working more than forty hours in a workweek; failure to pay for all hours worked; failure to issue proper wage statements; and failure to issue proper notifications of pay rate pursuant to New York's Wage Theft Prevention Act. Defendants maintained several unlawful policies and practices resulting in a failure to pay proper overtime and regular wages including their "No Overtime Pay Policy," an unlawful "Automatic Deduction Policy," and "Time Shaving Practices."

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over Plaintiffs' federal FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 and supplemental

jurisdiction over Plaintiffs' New York State law claims pursuant to 28 U.S.C. § 1367.

5.     This Court has personal jurisdiction over Defendants because each of them are domiciled within the State of New York.

6.     Venue is proper in the Eastern District of New York because Defendants conduct business in this District and the acts and/or omissions giving rise to the claims herein allegedly took place in this District. Moreover, all of the Defendants are domiciled in this District.

## PARTIES

7.     Defendant John Armato is an individual domiciled in Centerport, New York.

8.     At all relevant times, Defendant John Armato was and is an owner and operator and Chief Executive Officer of Defendant Tuscany Marble and Granite, Inc.

9.     Defendant John Armato was and is in active control and management of Tuscany, regulated and regulates the employment of persons employed by Tuscany including Plaintiffs, acts directly and indirectly in the interest of Tuscany in relation to the employees, and was and is thus an employer of Plaintiffs and other

similarly situated Tuscany Laborers under the Fair Labor Standards Act and New York State Labor Law.

10.     Defendant Yvette Armato is an individual domiciled in Centerport, New York.

11.     At all relevant times, Defendant Yvette Armato was and is an operator of Tuscany and, upon information and belief, an owner of Defendant Tuscany Marble and Granite, Inc.

12.     Defendant Yvette Armato was and is in active control and management of Tuscany, regulated and regulates the employment of persons employed by Tuscany including Plaintiffs, acts directly and indirectly in the interest of Tuscany in relation to the employees, and was and is thus an employer of Plaintiffs and other similarly situated Tuscany Laborers under the Fair Labor Standards Act and New York State Labor Law.

13.     Defendants John Armato and Yvette Armato are hereafter collectively referred to as "Individual Defendants."

14.     Defendant Tuscany Marble and Granite, Inc. is a New York corporation with its principal place of business in Deer Park, New York.

15.     The Individual Defendants operate Tuscany through Defendant Tuscany Marble and Granite, Inc.

16. At all times relevant to this action, Tuscany was an "enterprise engaged in interstate commerce" within the meaning of the FLSA. The enterprise has an annual gross volume of sales in excess of $500,000.

17. Plaintiff Walter Avelar was employed by Defendants as an installer from prior to March 2015 through approximately April 2019.

18. Plaintiff Julio Castro was employed by Defendants as an installer's helper from approximately September 2018 through March 2019.

19. Plaintiff Edwin Guevara was employed by Defendants as an installer from prior to March 2015 through approximately March 2020.

20. Plaintiff Ruben Guevara was employed by Defendants as an installer's helper from approximately August 2016 through approximately January 2020.

21. Plaintiff Jorge Mojica was employed by Defendants as a stone finisher from prior to March 2015 through approximately October 2020.

22. Plaintiff Nelson Rios was employed by Defendants as an installer's helper from approximately April 2016 through approximately April 2020.

23. Plaintiff Jaime Reyes was employed by Defendants as an installer's helper from prior to March 2015 through approximately November 2018.

24. Plaintiff Daniel Mejia was employed by Defendants as an installer's helper and installer from prior to March 2015 through approximately March 2019.

25.     Plaintiff Alfaro was employed by Defendants as an installer's helper from approximately May 2015 through approximately July 2017.

26.     On or about February 23, 2021, Plaintiffs served Defendants with a demand for inspection of shareholder records and notice to shareholders concerning Defendant Tuscany Marble and Granite, Inc. pursuant to New York Business Corporation Law § 630.

27.     Defendants have not produced the shareholder information nor made the information available to Plaintiffs for inspection.

28.     Plaintiffs and Defendants executed an agreement to toll the statute of limitations for Plaintiffs and potential plaintiffs' claims from March 22, 2021. Plaintiffs terminated the tolling agreement effective June 18, 2021.

## PLAINTIFFS' FACTUAL ALLEGATIONS

**Defendants' Failure To Pay Overtime Premium Pay**

29.     At all relevant times, Defendants owned, and operated Tuscany located at 243 Skidmore Road, Deer Park, New York.

30.     At all relevant times, Tuscany has had gross operating revenues in excess of $500,000.00 per year.

31.     Plaintiffs and other similarly situated workers were employed as Tuscany Laborers by Defendants.

32.     Plaintiffs and other similarly situated Tuscany Laborers were non-exempt employees under the FLSA and the New York Labor Law.

33.     Plaintiffs and other similarly situated Tuscany Laborers have not received all of the overtime compensation owed to them when working more than forty hours in a workweek.

34.     Defendants maintained several common pay practices and policies with respect to Plaintiffs and other similarly situated Tuscany Laborers.

35.     First, Plaintiffs and other similarly situated Tuscany Laborers were subject to Defendants' No Overtime Pay Policy.

36.     Plaintiffs and other Tuscany Laborers were not paid any premium for overtime hours worked.

37.     Instead Defendants paid Plaintiffs and other Tuscany Laborers at their regular hourly rate or nothing at all for overtime hours worked.

38.     Second, Plaintiffs and other similarly situated Tuscany Laborers were subject to Defendants' Automatic Deduction Policy.

39.     Defendants automatically deducted one hour per shift for lunch.

40.     But Defendants did not permit Plaintiffs and other Tuscany Laborers to take lunch break of longer than thirty minutes and often required them to work with no uninterrupted meal break at all.

41.     Defendants' Automatic Deduction Policy resulted in an underpayment of two and a half hours to five hours of unpaid time per week.

42.     Third, Defendants regularly failed to pay Plaintiffs and other similarly situated Tuscany Laborers for all of the hours they worked, by reducing the number of hours paid ("Time Shaving Practices").

43.     Because Plaintiffs and similarly situated Tuscany Laborers regularly worked more than forty hours per week, Defendants' Automatic Deduction Policy and Time Shaving Practices regularly resulted in Defendants' nonpayment of wages that should have been paid at the overtime rate.

44.     However, in instances where Tuscany Laborers worked less than forty hours in a workweek, Defendants' Automatic Deduction Policy and Time Shaving Practices resulted in unpaid regular wages.

**Wage Statements**

45.     At all relevant times, Defendants issued fraudulent wage statements or no wage statement at all to Plaintiffs and the Tuscany Laborers in violation of New York Labor Law 195(3).

46.     Some of the Tuscany Laborers were paid entirely in cash off the books and provided with no wage statements.

47.     Most of the Tuscany Laborers were paid a portion of their wages by check in the amount indicated on the Tuscany Laborers' wage statements and paid a portion in cash off the books.

48.     Until approximately 2016, Defendants issued wage statements improperly listing Tuscany Laborers, including Plaintiffs working for Defendants at the time, as salaried employees.

49.     Beginning in approximately 2016, Defendants issued wage statements improperly listing Tuscany Laborers, including Plaintiffs working for Defendants at the time, as working up to only forty hours per week when in fact the Tuscany Laborers were working a substantial number of overtime hours.

50.     When Defendants did issue wage statements, they included only the portion of wages paid by check on those statements and excluded the amounts paid in cash off the books.

51.     When Defendants did issue wage statements, they underreported the hourly rates of Plaintiffs and other Tuscany Laborers on those statements.

**Notifications of Pay Rate**

52.     At all relevant times, Defendants issued fraudulent notifications of pay rate or no notifications of pay rate at all to Plaintiffs and the Tuscany Laborers in violation of New York Labor Law 195(1).

53.     In some instances Defendants failed to issue Notifications of Pay Rate at all.

54.     When Defendants did issue Notifications of Pay Rate, they consistently falsely represented the Tuscany Laborer's regular hourly rate, by underreporting their hourly rates.

55.     When Defendants did issue Notifications of Pay Rate, they consistently failed to indicate the Tuscany Laborers' overtime rate.

56.     Instead Defendants either crossed out the portion of the forms concerning overtime pay or reiterated their No Overtime Pay Policy.

**Defendants' Fraudulent Document Scheme**

57.     In approximately mid-2016, the Department of Labor conducted an investigation of Defendants' pay and recordkeeping practices.

58.     During the Department of Labor investigation, Defendants directed many of the Plaintiffs and other Tuscany Laborers, including Plaintiffs Mojica and Edwin Guevara, if questioned, to tell the investigators they work only 40 hours per week and to say nothing else.

59.     Upon information and belief, several Tuscany Laborers cooperated with the investigation and were authorized to receive money from the Department of Labor.

60.     Upon information and belief, Defendants directed the cooperating employees to remit their awards back to Defendants.

61.     Upon information and belief, those Tuscany Laborers remitted their awards back to Defendants.

62.     Following the Department of Labor investigation, Defendants developed an elaborate scheme to create a false paper trail of fraudulent documents in an effort to conceal their unlawful practices from civil and criminal authorities.

**The Actual Time Sheets**

63.     Prior to early 2017, Defendants maintained only one set of time sheets which indicated the actual work hours of the Tuscany Laborers, less the thirty-minute lunch breaks Tuscany Laborers were sometimes permitted to take (the "Actual Time Sheets").

64.     Actual Time Sheets were kept for all Tuscany Laborers, including those workers paid in cash off the books.

65.     The Actual Time Sheets were generally maintained on a daily basis.

66.     Plaintiffs and other Tuscany Laborers were not required to sign or initial the Actual Time Sheets, but were required to contemporaneously enter the start and end times of their shift each day.

67.    Tuscany Laborers were required to log their start and end times each day.

68.    The Actual Time Sheets included all days worked by Plaintiffs and other Tuscany Laborers, including work performed on Saturdays.

69.    Upon information and belief, Defendants continue to maintain the Actual Time Sheets.

**The Phony Time Sheets**

70.    Beginning in early 2017, Defendants began maintaining a second set of times sheets, which contained fraudulent information concerning the Tuscany Laborers work hours (The "Phony Time Sheets").

71.    The Phony Time Sheets falsely indicated that Plaintiffs and Tuscany Laborers worked no more than forty hours each work week.

72.    Defendants required most Plaintiffs and other Tuscany Laborers to complete the Phony Time Sheets at one time for the period of one or more weeks in order to receive their pay that week.

73.    Defendants required most Plaintiffs and Tuscany Laborers to initial the Phony Time Sheets.

74.    Defendants did not require those Tuscany Laborers who Defendants paid completely in cash off the books to complete the Phony Time Sheets.

75.     The Phony Time Sheets did not include any time worked on Saturdays, even though several Tuscany Laborers, including Plaintiff Mojica often worked six days per week Monday through Saturday.

76.     When Defendants required the Tuscany Laborers to initial the Phony Time Sheets, they knew this information was false and fraudulent.

**The Payroll Receipt Forms**

77.     Beginning in early 2017, Defendants began requiring Plaintiffs and other Tuscany Laborers paid on the books to sign monthly "Payroll Receipt Forms."

78.     When Defendants required Plaintiffs and other Tuscany Laborers to sign the Payroll Receipt Forms, they knew this information was false and fraudulent.

79.      Following the Department of Labor investigation, Defendants admitted to Tuscany Laborers working for Defendants at the time, including Plaintiffs Alfaro, Edwin Guevara, Reyes, Mojica, Rios, and Avelar that they were owed back wages dating back to 2011.

80.     Defendants failed to pay any back wages to those Plaintiffs.

**Plaintiffs' Experience**

Plaintiff Walter Avelar

81.     Plaintiff Walter Avelar was employed by Defendants as a non-exempt installer from prior to March 2015 through approximately April 2019.

82.     Plaintiff Avelar was subject to Defendants' Automatic Deduction Policy.

83.     Plaintiff Avelar was subject to Defendants' Time Shaving Practices.

84.     Plaintiff Avelar was not paid overtime premium pay for hours worked in excess of forty hours each week and was not paid at all for many overtime hours.

85.     In at least one week in June 2018, Plaintiff Avelar worked more than 55 hours, but received no overtime premium pay and was not paid at all for many of the overtime hours he worked that week.

86.     Plaintiff Avelar was paid part by check and part in cash off the books.

87.     During the relevant period, Plaintiff Avelar's regular hourly rate was $25.00 per hour.

88.     Plaintiff Avelar was required to sign documents indicating that his regular hourly rate was substantially less than $25.00 per hour.

89.     Defendants did not issue Plaintiff Avelar proper notifications of pay rate in violation of NYLL 195(1)(a).

90.     Defendants did not issue Plaintiff Avelar proper wage statements in violation of NYLL 195(3).

Plaintiff Julio Castro

91.     Plaintiff Julio Castro was employed by Defendants as a non-exempt installer's helper from approximately September 2018 through March 2019.

92.     Plaintiff Castro was subject to Defendants' Automatic Deduction Policy.

93.     Plaintiff Castro was subject to Defendants' Time Shaving Practices.

94.     Plaintiff Castro was not paid for hours worked in excess of forty hours in a workweek.

95.     In at least one week in February 2019, Plaintiff Castro worked more than 42 hours, but received no overtime premium pay and was not paid at all for many of the overtime hours he worked that week.

96.     Plaintiff Castro's regular hourly rate was $18.00 per hour.

97.     Plaintiff Castro was required to sign documents indicating that his regular hourly rate was substantially less than $18.00 per hour.

98.     Plaintiff Castro was paid part by check and part in cash off the books.

99.     Defendants did not issue Plaintiff Castro proper notifications of pay rate in violation of NYLL 195(1)(a).

100.    Defendants did not issue Plaintiff Castro proper wage statements in violation of NYLL 195(3).

Plaintiff Edwin Guevara

101.    Plaintiff Edwin Guevara was employed by Defendants as a non-exempt installer from prior to March 2015 through approximately March 2020.

102.    Plaintiff Edwin Guevara was subject to Defendants' Automatic Deduction Policy.

103.    Plaintiff Edwin Guevara was subject to Defendants' Time Shaving Practices.

104.    Plaintiff Edwin Guevara was not paid overtime premium pay for hours worked in excess of forty hours each week and was not paid at all for many overtime hours.

105.    Plaintiff Edwin Guevara was paid part by check and part in cash off the books.

106.    At all times relevant, Plaintiff Edwin Guevara's regular hourly rate was $22.00 per hour.

107.    Plaintiff Edwin Guevara was required to sign documents indicating that his regular hourly rate was substantially less than $22.00 per hour.

108.    In at least one week in May 2019, Plaintiff Edwin Guevara worked more than 50 hours, but received no overtime premium pay and was not paid at all for many of the overtime hours he worked that week.

109.    Defendants did not issue Plaintiff Edwin Guevara proper notifications of pay rate in violation of NYLL 195(1)(a).

110.    Defendants did not issue Plaintiff Edwin Guevara proper wage statements in violation of NYLL 195(3).

Plaintiff Ruben Guevara

111.    Plaintiff Ruben Guevara was employed by Defendants as a non-exempt installer's helper from approximately August 2016 through approximately January 2020.

112.    Plaintiff Ruben Guevara was subject to Defendants' Automatic Deduction Policy.

113.    Plaintiff Ruben Guevara was subject to Defendants' Time Shaving Practices.

114.    Plaintiff Ruben Guevara was not paid for hours worked in excess of forty hours in a workweek.

115.    In at least one week in May 2019, Plaintiff Ruben Guevara worked more than 50 hours, but received no pay for overtime hours worked.

116.    Plaintiff Ruben Guevara was paid part by check and part in cash off the books.

117.    Plaintiff Ruben Guevara's regular hourly rate was $16.00 per hour.

118.    Plaintiff Ruben Guevara was required to sign documents indicating that his regular hourly rate was substantially less than $16.00 per hour.

119.    Defendants did not issue Plaintiff Ruben Guevara proper wage statements in violation of NYLL 195(3).

120.    Defendants did not issue Plaintiff Ruben Guevara proper notifications or pay rate in violation of NYLL 195(1)(a).

Plaintiff Jorge Mojica

121.    Plaintiff Jorge Mojica was employed by Defendants as a non-exempt stone fabricator from prior to March 2015 through approximately October 2020.

122.    Plaintiff Mojica was not paid for all hours worked.

123.    Plaintiff Mojica was subject to Defendants' Automatic Deduction Policy.

124.    Plaintiff Mojica was subject to Defendants' Time Shaving Practices.

125.    Plaintiff Mojica was not paid overtime premium pay for hours worked in excess of forty hours each week and was not paid at all for many overtime hours that he worked.

126.    For example, in at least one week in May 2019, Plaintiff Mojica worked more than 55 hours, but received no overtime premium pay and was not paid at all for many of the overtime hours he worked that week.

127.    Plaintiff Mojica was paid part by check and part in cash off the books.

128.    At all times relevant, Plaintiff Mojica's regular hourly rate was $21.50 per hour.

129.    Plaintiff Mojica was required to sign documents indicating that his regular hourly rate was substantially less than $21.50 per hour.

130.    Defendants did not issue Plaintiff Mojica proper notifications or pay rate in violation of NYLL 195(1)(a).

131.    Defendants did not issue Plaintiff Mojica proper wage statements in violation of NYLL 195(3).

Plaintiff Nelson Rios

132.    Plaintiff Nelson Rios was employed by Defendants as a non-exempt installer's helper from approximately April 2016 through approximately April 2020.

133.    Plaintiff Rios was not paid for all hours worked.

134.    Plaintiff Rios was subject to Defendants' Automatic Deduction Policy.

135.    Plaintiff Rios was subject to Defendants' Time Shaving Practices.

136.    Plaintiff Rios was not paid for hours worked in excess of forty hours in a workweek.

137.    In at least one week in May 2019, Plaintiff Rios worked more than 55 hours, but received no pay for overtime hours worked.

138.    Plaintiff Rios was paid part by check and part in cash off the books.

139.    At all times relevant, Plaintiff Rios' regular hourly rate was $13.50 per hour.

140.    Plaintiff Rios was required to sign documents indicating that his regular hourly rate was less than $13.50 per hour.

141.    Defendants did not issue Plaintiff Rios proper notifications or pay rate in violation of NYLL 195(1)(a).

142.    Defendants did not issue Plaintiff Rios proper wage statements in violation of NYLL 195(3).

Plaintiff Jaime Reyes

143.    Plaintiff Jaime Reyes was employed by Defendants as a non-exempt installer's helper from prior to March 2015 through approximately November 2018.

144.    Plaintiff Reyes was subject to Defendants' Automatic Deduction Policy.

145.    Plaintiff Reyes was subject to Defendants' Time Shaving Practices.

146.    Plaintiff Reyes was not paid for hours worked in excess of forty hours in a workweek.

147.    In at least one week in June 2018, Plaintiff Reyes worked more than 50 hours, but received no pay for overtime hours worked.

148.   Plaintiff Reyes was paid part by check and part in cash off the books.

149.   In March 2015, Plaintiff Reyes' regular hourly rate was $19.00 per hour.

150.   In approximately July 2015, Plaintiff Reyes' regular hourly rate was raised to $22.00 per hour.

151.   Plaintiff Reyes was required to sign documents indicating that his regular hourly rate was substantially lower than it actually was.

152.   Defendants did not issue Plaintiff Reyes proper notifications or pay rate in violation of NYLL 195(1)(a).

153.   Defendants did not issue Plaintiff Reyes proper wage statements in violation of NYLL 195(3).

<u>Plaintiff Daniel Mejia</u>

154.   Plaintiff Mejia was employed by Defendants from prior to March 2015 through approximately March 2019.

155.   Plaintiff Mejia started as a non-exempt employer's helper and was promoted to a non-exempt installer in approximately early 2017.

156.   Plaintiff Mejia was subject to Defendants' Automatic Deduction Policy.

157.   Plaintiff Mejia was subject to Defendants' Time Shaving Practices.

158.    Plaintiff Mejia was not paid overtime premium pay for hours worked in excess of forty hours in a workweek.

159.    Plaintiff Mejia worked more than sixty hours in some weeks.

160.    Plaintiff Mejia's regular hourly rate was $15.50 per hour in 2015. By the time he left the job in 2019, he regular hourly rate was $19.50 per hour.

161.    Defendants did not issue Plaintiff Mejia notifications of pay rate in violation of NYLL 195(1)(a).

162.    Defendants did not issue Plaintiff Mejia wage statements in violation of NYLL 195(3).

Plaintiff Alexander Alfaro

163.    Plaintiff Alexander Alfaro was employed by Defendants as a non-exempt installer from approximately early 2015 through approximately July 2017.

164.    Plaintiff Alfaro was subject to Defendants' Automatic Deduction Policy.

165.    Plaintiff Alfaro was subject to Defendants' Time Shaving Practices.

166.    Plaintiff Alfaro was not paid overtime premium pay for hours worked in excess of forty hours each week and was not paid at all for many overtime hours.

167.   In at least one week in December 2016, Plaintiff Alfaro worked more than 55 hours, but received no overtime premium pay and was not paid at all for many of the overtime hours he worked that week.

168.   Plaintiff Alfaro was paid part by check and part in cash off the books.

169.   At all times relevant, Plaintiff Alfaro's regular hourly rate was $35.00 per hour.

170.   Plaintiff Alfaro was required to sign documents indicating that his regular hourly rate was less than $35.00 per hour.

171.   Defendants did not issue Plaintiff Alfaro proper notifications or pay rate in violation of NYLL 195(1)(a).

172.   Defendants did not issue Plaintiff Alfaro proper wage statements in violation of NYLL 195(3).

## COLLECTIVE ACTION ALLEGATIONS

173.   FLSA Plaintiffs bring this case as an "opt-in" collective action on behalf of similarly situated employees of Defendants pursuant to 29 U.S.C. § 216(b).

174.   FLSA Plaintiffs, on behalf of themselves and the prospective collective class, seek relief on a collective basis challenging Defendants' failure to pay overtime.

175.    The Collective Class is defined as follows: "All similarly situated laborers of Tuscany Marble and Tile, Inc. from March 22, 2018, who elect to opt-in to this action."

176.    FLSA Plaintiffs are similar to other members of the Collective because: 1) members of the Collective Class worked more than forty hours in a workweek without overtime premium pay; and 2) members of the Collective Class have been subject to Defendants' same policies and practices through which they were deprived of overtime compensation including Defendants' No Overtime Pay Policy, Automatic Deduction Policy and Time Shaving Practices.

177.    FLSA Plaintiffs and members of the Collective all perform or performed similar duties and were all deprived of overtime premium pay due to them as a result of Defendants' No Overtime Pay Policy, Automatic Deduction Policy and Time Shaving Practices.

178.    FLSA Plaintiffs' experience is typical of the experiences of the other Collective class members. Defendants' failure to pay overtime wages at the rates required by the FLSA result from generally applicable policies or practices and do not depend on the personal circumstances of FLSA Plaintiffs.

179.    With respect to Defendants' FLSA overtime violations, their unlawful conduct has been widespread, repeated, and consistent.

## CLASS ACTION ALLEGATIONS

180.   Plaintiffs bring this action as a prospective class action on behalf of themselves and all other persons similarly situated.

181.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, for purposes of the state law claims, Plaintiffs seek the certification of a class of all persons who, during the relevant time period of March 22, 2015, to the date of final judgment in this matter, have been employed by Defendants as a non-exempt laborer (hereinafter referred to as the "Tuscany Laborer Class").

182.   The Tuscany Laborer Class includes more than forty similarly situated workers who have not been paid for all hours worked, not been paid overtime pay due to them and who have not received proper wage statements or notifications of pay rate. Members of the Laborer Class would benefit from the issuance of a court-supervised notice of the lawsuit and the opportunity to opt out of a certified class.

183.   The class is so numerous as to make it impracticable to join all members of the class as Plaintiffs.

184.   There are questions of law and fact common to all members of the class and those questions predominate over any question affecting only individual class members. Defendants have acted on grounds generally applicable to all class members, in that Defendants' acts and omissions constitute a violation of the wage

laws of the State of New York.

185.   Common questions of law and fact include, but are not limited to, the following:

a.  Whether each of the Defendants was a joint employer of the Tuscany Laborers;

b.  Whether Defendants have consistently failed to pay Plaintiffs and other similarly situated class members overtime wages at one and one-half times their regular rate of pay for hours worked in excess of forty hours;

c.  Whether Defendants' Automatic Deduction Policy deprived the Tuscany Laborers of wages for all hours worked;

d.  Whether Defendants' Automatic Deduction Policy deprived the Tuscany Laborers of overtime;

e.  Whether Defendants' Time Shaving Practices deprived the Tuscany Laborers of overtime;

f.  Whether Defendants' No Overtime Pay Policy deprived the Tuscany Laborers of overtime;

g.  Whether Defendants required the Tuscany Laborers to initial fraudulent time sheets for the purpose of concealing the underpayment of wages;

h.  Whether Defendants paid Tuscany Laborers partially or wholly in cash off the

books for the purpose of concealing the underpayment of wages;

i. Whether Defendants can satisfy their burden of proving a good faith basis for believing that any underpayment of wages was in compliance with the law;

j. Whether Defendants have failed systematically to provide proper wage payment statements as required by the New York Labor Law; and

k. Whether Defendants have systematically failed to provide proper Wage Theft Prevention Act notifications of pay rate as required by the New York Labor Law.

186.    Plaintiffs' claims are typical of the claims of all class members and Defendants' anticipated affirmative defenses thereto are typical of the Defendants' anticipated affirmative defenses to the claims of other class members.

187.    Plaintiffs will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to the claims of the class. Plaintiffs are similarly situated with, and have suffered similar injuries as, the members of the class they seek to represent.

188.    Plaintiffs have retained counsel capable of handling class action suits. Neither Plaintiffs nor their counsel have an interest which is in conflict with the class or which might cause them not to vigorously pursue this action.

189.    Pursuant to F.R.C.P. 23(b)(1), class certification is appropriate here

because the prosecution of separate actions by class members could result in either inconsistent adjudications establishing incompatible pay practices, or could as a practical matter dispose of the legal claims of class members not parties to such separate adjudications.

190.    Pursuant to F.R.C.P. 23(b)(3), class certification is appropriate here because questions of law or fact common to members of the class predominate over any questions affecting only individual members and because a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS
### (Overtime Violations: FLSA)

191.    Plaintiffs repeat and reallege the previous allegations as if fully set forth herein.

192.    The FLSA Plaintiffs bring this claim on behalf of themselves and all similarly situated employees who opt-in to the action.

193.    At all relevant times, Defendants have been, and continue to be, "employers" engaged in the interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

194.    Defendants employ or employed numerous Tuscany Laborers, including the FLSA Plaintiffs and other similarly situated Tuscany Laborers as non-exempt employees.

195.    At all relevant times, Tuscany has had gross operating revenues in excess of $500,000.00 per year and satisfies the threshold test for the "enterprise" requirement under the FLSA.

196.    The FLSA requires each covered employer, such as Defendants, to compensate their non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week.

197.    Defendants failed to pay the FLSA Plaintiffs and the prospective collective class members one and one-half times their regular hourly rates for all hours worked in excess of forty in a workweek.

198.    Defendants have not acted in good faith and did not have a reasonable basis for believing that they did not violate the FLSA.

199.    Defendants' violations of the FLSA were willful, as evidenced by Defendants' fraudulent bookkeeping practices designed to deprive Plaintiffs and the Class of appropriate overtime payments.

200.    Similarly situated Tuscany Laborers would benefit from an opportunity to receive notice of the lawsuit and an opportunity to opt-in to the action.

201.    As a result of Defendants' violation of FLSA, the FLSA Plaintiffs and any Opt-in Plaintiffs have been injured and are entitled to damages for unpaid overtime, liquidated damages and attorneys' fees costs, disbursements and interest thereon.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS
### (Overtime Violations: New York Labor Law)

202.    Plaintiffs repeat and reallege the previous allegations as if fully set forth herein.

203.    This cause of action is brought against Defendants for failure to pay overtime for work performed by Plaintiffs and prospective Class Members in excess of forty hours per week pursuant to NYLL 191, 663(1).

204.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of New York Labor Law §§ 2 and 651.

205.    At all times relevant Plaintiffs were Defendants' non-exempt employees within the meaning of New York Labor Law §§ 2 and 651.

206.    Defendants willfully required, suffered or permitted Plaintiffs to work overtime and willfully failed to pay them overtime compensation of one and one-half times the regular rate of pay for each hour in excess of forty hours in a workweek as required under New York Labor Law § 650; 12 NYCRR § 146-1.4.

207.    As a result of Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, amounts proven at trial for unpaid overtime wages, liquidated damages, reasonable attorney's fees, and the costs and disbursements of the action, pursuant to New York Labor Law § 663(1).

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS
### (Failure to Pay Wages)

208.    Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

209.    This cause of action is brought against Defendants for failure to pay wages for work performed by Plaintiffs and prospective Class Members pursuant to NYLL §§ 191, 663(1).

210.    New York Labor Law requires that wages be paid on an employer's regular payday for all hours worked and NYLL 663(1) requires the payment of all wage owed.

211.    Defendants have failed to pay Plaintiffs and prospective Class Members all wages for the hours they each worked for Defendants.

212.    Due to Defendants' violations of the New York Labor Law, Plaintiffs and the members of the Class are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs and pre-judgment and post-judgment interest.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS
### (Violation of the Wage Theft Prevention Act: New York Labor Law)

213.    Plaintiffs repeat and reallege the previous allegations as if fully set forth herein.

214.    New York Labor Law § 195(1)(a) requires Defendants to provide Plaintiffs with notifications of pay rate at the commencement of their employment, in both English and the employees primary language, and to preserve those records for a period of six years.

215.    Those statements must include: the employee's rate or rates of pay, including overtime rate of pay; where applicable; how the employee is paid; and any allowances taken as part of the minimum wage and information identifying the employer.

216.    Defendants failed to furnish accurate notifications of pay rate in either English or Spanish in violation of the Wage Theft Prevention Act.

217.    Due to Defendants' violation of New York State Law, Plaintiffs are entitled to recover from Defendants an award of statutory damages pursuant to NYLL 195(1)(a); 198(1)(d) plus costs interest and reasonable attorneys' fees.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS
### (Violation of the Wage Theft Prevention Act: New York Labor Law)

218.    Plaintiffs repeat and reallege the previous allegations as if fully set forth herein.

219.    New York Labor Law § 195(3) requires Defendants to provide Plaintiffs with wage statements with every payment of wages listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

220.    Defendants failed to furnish Plaintiffs with wage statements in compliance with the Wage Theft Prevention Act.

221.    Due to Defendants' violation of New York State Law, Plaintiffs are entitled to recover from Defendants an award of statutory damages pursuant to NYLL 195(3)(a); 198(1)(d) plus costs interest and reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, demand as follows:

A.      A ruling conditionally certifying the Collective Class an order authorizing the issuance of the notice to the members of the Collective and an opportunity to opt-in to the case;

B.      An Order Certifying the Tuscany Laborer Class pursuant to Rule 23 of the Federal Rules of Civil Procedure; designating Plaintiffs as class representatives; and designating of Plaintiffs' counsel as class counsel;

C.      An award to Plaintiffs and any opt-in Plaintiffs under the FLSA and NYLL for unpaid overtime wages and an additional amount equal as liquidated damages pursuant to each statute;

D.      An award to Plaintiffs, any opt-in Plaintiffs and Class Members for statutory damages for Defendant's violations of the pay rate notification provisions of the Wage Theft Prevention Act;

E. An award to Plaintiffs, any opt-in Plaintiffs and Class Members for statutory damages for Defendant's violations of the wage statement requirements of the Wage Theft Prevention Act;

F. An award to Plaintiffs, any opt-in Plaintiffs and Class Members for prejudgment and post judgment interest;

G. An award to Plaintiffs and any opt-in Plaintiffs and Class Members for the cost of this action together with reasonable attorneys' fees; and

H. Such other and further relief as this Court may deem necessary and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand trial by jury of all triable issues.

Dated: Melville, New York
  June 21, 2021

**THE MARLBOROUGH LAW FIRM, P.C**

*By:* Christopher Marlborough (CM6107)
445 Broad Hollow Road, Suite 400
Melville, New York 11747
(212) 991-8960
chris@marlboroughlawfirm.com

CLASS AND COLLECTIVE ACTION COMPLAINT 35

—

Bruce McBrien
MCBRIEN LAW PC
140 Fell Ct., Suite 305
Hauppauge, NY 11788
(631) 403-0335
bruce@mcbrienlaw.com


*Attorneys for Plaintiffs*